**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANARYAE LEWIS,<br><br>   *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>   *Defendant*. | No. 24-cv-00971 (CJN) |

## REPLY IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE AMENDED COMPLAINT

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................................i

**REPLY IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE AMENDED COMPLAINT**..........................................................................................................1

   **INTRODUCTION**..........................................................................................................................1

   **ARGUMENT**..................................................................................................................................1

      **I.   Plaintiff's Fourteenth Amendment Claim Should Be Dismissed**..............................................1

      **II.  Plaintiff's § 1981 Claim Fails**....................................................................................................2

          **A. Plaintiff Fails to State a Claim Under §§ 1981 and 1983 Premised on the District's Municipal Liability Under a Policy or Custom Theory**................................................2

          **B. Plaintiff Fails to State a Claim Under §§ 1981 and 1983 Under a Policymaker Theory**.....9

          **C. Plaintiff Fails to State a Claim Under §§ 1981 and 1983 Under a Deliberate Indifference Theory**................................................................................................................................11

      **III. Plaintiff Fails to State a Race-Based Disparate Treatment Claim.**...........................................11

   **CONCLUSION**............................................................................................................................14

# **TABLE OF AUTHORITIES**

Cases                                                                                                           Page(s)

*3D Glob. Sols., Inc. v. MVM, Inc.*,
  552 F. Supp. 2d 1 (D.D.C. 2008) ................................................................................. 8, 13
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................... 5, 6
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................... 5, 6
*Bennett v. Schmidt*,
  153 F.3d 516 (7th Cir. 1998) ............................................................................................. 5
*Bonaccorsy v. District of Columbia*,
  658 F. Supp. 2d 18 (D.D.C. 2010) ..................................................................................... 2
*Carter v. District of Columbia*,
  795 F.2d 116 (D.C. Cir. 1986) ....................................................................................... 3, 4
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 7
*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ........................................................................................................... 9
*Comcast Corp v. Nat'l Ass'n of Afr. Am. Owned Media*,
  589 U.S. 327 (2020) ........................................................................................................... 4
*Connick v. Thompson*,
  131 S. Ct. 1350 (2011) ....................................................................................................... 3
*Davis v. Transportation Sec. Admin.*,
  264 F. Supp. 3d 6 (D.D.C. 2017) ........................................................................... 1, 11, 12
*Lattisaw v. District of Columbia*,
  958 F. Supp. 2d 27 (D.D.C. 2013) ..................................................................................... 6
*Ekwem v. Fenty*,
  666 F. Supp. 2d 71 (D.D.C. 2009) ..................................................................................... 2
*Evangelou v. District of Columbia*,
  901 F. Supp. 2d 159 (D.D.C. 2012) ................................................................................... 9
*Forkkio v. Powell*,
  306 F.3d 1127 (D.C. Cir. 2002) ....................................................................................... 12
*Garcia v. District of Columbia*,
  2024 WL 1111230 (D.D.C. Mar. 14, 2024) .................................................................... 10
*George v. Leavitt*,
  407 F.3d 405 (D.C. Cir. 2005) ......................................................................................... 13
*Gray v. Universal Service Administrative Company*,
  581 F. Supp. 2d 47 (D.D.C. 2008) ..................................................................................... 5
*Hammon v. Barry*,
  752 F. Supp. 1087 (D.D.C. 1990) ................................................................................. 7, 8
*Kreiger v. Fadely*,
  211 F.3d 134 (D.C. Cir. 2000) ........................................................................................... 5

*Lancaster v. DaVita Vance-Cooks*,
   967 F. Supp. 2d 375 (D.D.C. 2013) .................................................................................. 12, 13
*Mawakana v. Bd. of Trustees of the Univ. of D.C.*,
   926 F.3d 859 (D.C. Cir. 2019) ............................................................................................... 5, 6
*Muldrow v. City of St. Louis*,
   601 U.S. 346 (2024) ................................................................................................................ 12
*Neuren v. Adduci, Mastriani, Meeks & Schill*,
   43 F.3d 1507 (D.C. Cir. 1995) ................................................................................................ 13
*Page v. Mancuso*,
   999 F. Supp. 2d 269 (D.D.C. 2013) .......................................................................................... 3
*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) .................................................................................................................. 9
*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ..................................................................................................... 5
*Pierce v. Commonwealth Life Ins. Co.*,
   40 F.3d 796 (6th Cir. 1994) .................................................................................................... 13
*Ruffin v. District of Columbia*,
   662 F. Supp. 3d 1 (D.D.C. 2023) .............................................................................................. 2
*Ruffin v. District of Columbia*,
   2023 WL 10553598 (D.D.C. Jun 16, 2023) ............................................................................. 4
*Sanders v. District of Columbia*,
   522 F. Supp. 2d 83 (D.D.C. 2007) ........................................................................................ 3, 4
*Sheller-Pierre v. Gray*,
   888 F. Supp. 2d 34 (D.D.C. 2012) ........................................................................................ 3, 4
*Sims v. District of Columbia*,
   33 F. Supp. 3d 1 (D.D.C. 2014) ............................................................................................. 12
*Singletary v. District of Columbia*,
   766 F.3d 66 (D.C. Cir. 2014) ................................................................................................... 9
*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ............................................................................................... 5
*Steinberg v. District of Columbia*,
   901 F. Supp. 2d 63 (D.D.C. 2012) .......................................................................................... 11
*Williams v. District of Columbia*,
   9 A.3d 484 (D.C. 2010) ............................................................................................................ 5
*Wilson v. Wolfe*,
   2021 WL 230136 (D.D.C. Jan. 22, 2021) ................................................................................ 6

Other Authorities

42 U.S.C. § 1981 ................................................................................................... 2, 5, 6, 9, 11
42 U.S.C. § 1983 ............................................................................................. 2, 3, 5, 6, 7, 9, 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANARYAE LEWIS,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>*Defendant*. | No. 24-cv-00971 (CJN) |

**REPLY IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**INTRODUCTION**

Defendant District of Columbia (the District) submits this reply in support of its motion to dismiss the Amended Complaint. As set forth below, Plaintiff's arguments in opposition to the District's motion are misguided, and the Court should grant Defendant's motion and dismiss the Amended Complaint with prejudice.

**ARGUMENT**

**I.     Plaintiff's Fourteenth Amendment Claim Should Be Dismissed.**

Plaintiff asserts a claim under the Fourteenth Amendment, *see* Am. Compl. at 5, 16–17, ¶ 175, alleging that DCFEMS's "trial board policy and practice violates the 14th Amendment to the Constitution because it is racially discriminatory," *id*. ¶ 175. But as shown in the District's opening brief, the Fourteenth Amendment does not apply to the District or its employees. *See* Def.'s Mot. to Dismiss (Def.'s Mot.) at 11. Plaintiff fails to address the District's argument in her opposition. *See* Pl.'s Opp'n. Accordingly, the District's argument is conceded, and the Court should dismiss Plaintiff's Fourteenth Amendment claim. *See Davis v. Transp. Sec.*

1

*Admin.*, 264 F. Supp. 3d 6, 10 (D.D.C. 2017) ("When a plaintiff files an opposition to a dispositive motion and addresses only certain *arguments* raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

## II.   Plaintiff's § 1981 Claim Fails.

### A.   Plaintiff Fails to State a Claim Under §§ 1981 and 1983 Premised on the District's Municipal Liability Under a Policy or Custom Theory.

Plaintiff fails to show a plausible entitlement to relief under a policy or custom theory of municipal liability because she offers no facts demonstrating that a municipal custom or policy was the moving force behind her alleged disparate treatment. "The plaintiff bears the burden of pleading the existence of a municipal custom or practice that abridges her federal constitutional or statutory rights." *Ruffin v. District of Columbia*, 662 F. Supp. 3d 1, 10 (D.D.C. 2023) (citing *Bonaccorsy v. District of Columbia*, 658 F. Supp. 2d 18, 26 (D.D.C. 2010)). Here, Plaintiff's allegation that she was subjected to race-based disparate treatment in being referred to a trial board is not enough to show a discriminatory municipal custom, practice, or policy. *See* Def.'s Mot. at 8; *see also Ekwem v. Fenty*, 666 F. Supp. 2d 71, 79 (D.D.C. 2009) ("Proof of a single incident of unconstitutional activity is insufficient to impose liability [under § 1983] unless there was proof that there was a policy in place that was unconstitutional.") (cleaned up). And Plaintiff does not supply any facts showing that a discriminatory policy, custom, or practice caused her alleged injuries. *See* Am. Compl. at 3, 4 & ¶¶ 42–43, 62, 85. To the contrary, Plaintiff relies on conclusory allegations to assert to establish municipal liability.

Nonetheless, Plaintiff maintains that she "need only ***identify*** the custom, policy or practice was the driving force behind the harm she suffered." Pl.'s Opp'n at 12. However, even if Plaintiff's allegations could be construed as a factually supported custom, policy, or practice, she fails to illustrate how the custom, policies, or practices are "so persistent and widespread as

to practically have the force of law." *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)); *see also Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007); *Sheller-Pierre v. Gray*, 888 F. Supp. 2d 34, 40 (D.D.C. 2012); *Carter v. District of Columbia*, 795 F.2d 116 (D.C. Cir. 1986).  Plaintiff contends that the District's citation to *Page v. Mancuso* "makes no sense" because it "was a case involving a single police officer who stupidly charge[d] a citizen with a crime" and "the individual officer was protected by qualified immunity, and liability did not extend to the municipality because according to the Court, the plaintiff failed to allege some serious training deficiency, specific policy or any other basis to believe that this sort of error extended beyond the individual officer." Pl.'s Opp'n at 13 (citing *Page*, 999 F. Supp. 2d at 282–83).  However, Plaintiff's reading of *Page* is incorrect.  Among other things, the plaintiff in *Page* challenged the custom and practice of the Department of Corrections, not the Metropolitan Police Department, regarding strip searches under the Fourth and Fifth Amendments under § 1983.  In applying a motion to dismiss standard to these claims, the court held that plaintiff failed to establish "a *pattern or practice* of strip searches" because "two strip searches does not necessarily constitute a pattern." *Id.* at 285 (emphasis added) (citing *Carter*, 795 F.2d 116, 123 (D.C. Cir. 1986)) (rejecting the argument that evidence of 13 "actual instances of misconduct" was "sufficient to demonstrate a pervasive pattern").

Similarly, Plaintiff asserts that the District's citation to *Sanders v. District of Columbia*[1] is misplaced because there is a "clear contrast" between that case and Plaintiff's allegations.

---

[1] Plaintiff mistakenly asserts that the court in *Sanders* "denied the motion to dismiss plaintiff's retaliation claim, and concluded that it was not proper to dismiss that claim prior to discovery." Pl.'s Opp'n at 14.  On the contrary, the court granted the District's motion to dismiss Sanders's First Amendment retaliation claims brought under § 1983. *See Sanders*, 522 F. Supp. 2d at 88.

3

Pl.'s Opp'n at 14. But Plaintiff fails to acknowledge the portion of the holding in *Sanders* that the District cited to in its brief, which held that a *pervasive* policy or custom is required to establish municipal liability. *See* Def.'s Mot. at 14; *Sanders*, 522 F. Supp. 2d at 88. Plaintiff's reference to a consent decree that was entered into over 30 years ago in connection with a settlement, not a judgment, and "specific examples of other African American firefighters who were also subjected to racially disparate discipline," all of which are derived from unverified allegations and who are not similarly situated to Plaintiff, do not satisfy the pervasiveness requirement for municipal liability to apply. Pl.'s Opp'n at 14; *see* Def.'s Mot. at 16–17. Further, Plaintiff contends that *Sheller-Pierre v. District of Columbia* is not applicable to this action because "none of the observations" in that case are applicable to her claims. *See* Pl.'s Opp'n at 14. However, Plaintiff ignores the holding in that case that four incidents involving the plaintiff's management cannot establish a "persistent, pervasive practice of the city officials" to warrant municipal liability. *Sheller-Pierre*, 888 F. Supp. 2d at 40 (citing *Carter*, 795 F.2d 116 at 125); *see* Def.'s Mot. at 16 (citing *Sheller-Pierre*, 888 F. Supp. 2d at 40).

The law is clear: purely conclusory race-based allegations cannot support a theory of *Monell* liability. *Ruffin v. District of Columbia*, 2023 WL 10553598, at *2 (D.D.C. Jun 16, 2023); *see Comcast Corp v. Nat'l Ass'n of Afr. Am. Owned Media*, 589 U.S. 327, 340 (2020). And Plaintiff effectively concedes that her allegations are conclusory. *See* Pl.'s Opp'n at 7 ("If Plaintiff *can prove*, through robust discovery, that Defendant *does indeed have a history, pattern and custom* of throwing the proverbial book at the transgressions of Black firefighters while sparing non-African Americans, Plaintiff will meet her evidentiary burden to establish municipal liability.") (emphasis added); *see also id.* at 15 ("The discovery process is what allows the Plaintiff to prove that those observations are based in sound facts."). Yet it is well settled that

4

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "What is called for at the motion to dismiss stage is . . . 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Williams v. District of Columbia*, 9 A.3d 484, 493 (D.C. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Nevertheless, Plaintiff cites several cases for the purported proposition that she can hinge her § 1981 claim on conclusory allegations because the "pleading requirement for a claim under § 1981 via 1983 is not intended to be so high . . . ."  Pl.'s Opp'n at 16 (citing *Gray v. Universal Serv. Admin. Co.*, 581 F. Supp. 2d 47, 54 (D.D.C. 2008); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000); and *Kreiger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)).  However, none of these cases are analogous to this action because a municipality is not a named party in *Gray*, *Bennett*, or *Sparrow*, and although the United States is a named party in *Kreiger*, there are no §1981 claims implicated.  Accordingly, the courts in those cases did not address the legal requirements to maintain a municipal liability claim.

Additionally, Plaintiff encourages the Court to permit her to pursue her § 1981 claim despite failing to establish municipal liability because "dozens of cases in this jurisdiction . . . have allowed municipal employees to pursue Section 1981 and 1983 claims against the District of Columbia" and "the same result should occur here."  Pl.'s Opp'n at 22.  This argument holds no weight.  Plaintiff cites *Mawakana v. Board of Trustees of the University of the District of Columbia*, 926 F.3d 859 (D.C. Cir. 2019), which she claims "revers[ed] [the] lower court on other grounds but not[ed] that plaintiff was able to pursue Section 1981 and 1983 claims before summary judgment on lack of substantial evidence."  *Id.*  Not so.  Rather, the Circuit Court

5

found that the plaintiff failed to timely appeal the district court's grant of summary judgment on his Section 1981 and Section 1983 claims and does not address any issue relating to "lack of substantial evidence." *See Mawakana*, 926 F.3d at 863.  She also cites *Wilson v. Wolfe*, No. 20-CV-0100 (ABJ), 2021 WL 230136 (D.D.C. Jan. 22, 2021), *id.*, but there is no claim against the District in that case.  Moreover, Plaintiff cites to *Lattisaw v. District of Columbia*, 958 F. Supp. 2d 27 (D.D.C. 2013), *id.*, but the court there did not address the merits of the plaintiffs' Section 1981 and 1983 claims because they were barred by the statute of limitations.  Finally, she cites *Olatunji v. District of Columbia*, 958 F. Supp. 2d 27 (D.D.C. 2013), and *Brown v. District of Columbia*, No. 00-CV-377 (DAR) (D.D.C. Mar. 11, 2003), *id.*, but the District did not file a motion to dismiss in either of those cases.  Thus, Plaintiff's contention that her action should proceed past the motion to dismiss stage based on these cases is unfounded.

Simply put, the Amended Complaint does not contain sufficient "factual content to 'nudg[e]' [Plaintiff's] claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S at 680 (quoting *Twombly*, 550 U.S. at 570).  Rather, it offers nothing but conclusory allegations, which is insufficient to state a claim.[2]  *See id.* at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements [about discriminatory intent] without reference to its factual context.").

---

[2]   *See* Am. Compl. ¶ 62 ("[The District] has had a longstanding pattern, practice and custom of discriminatory behavior toward African American firefighters."); *id.* ¶ 184 ("[T]here is a custom, history and pattern and practice of DCFEMS of referring African American fire fighters to trial boards while their non-African American colleagues are not sent to trial boards for the same or similar transgressions."); *id.* ¶ 36 ("[I]t is common and customary for the Union to 'go to bat' or advocate for certain employees in order to convince the Fire Chief not to refer the employee to a trial board in the first place."); *id.* at 4 ("DCFEMS has a custom of reserving the harshest discipline for African Americans at DCFEMS.").

Moreover, Plaintiff may not, as she consistently does in her opposition, rely on unverified allegations from a complaint in another pending lawsuit to establish a municipal custom. *See* Pl.'s Opp'n at 10, 12, 14, 15, 21; Def.'s Mot. at 15. Unverified allegations from a complaint in another pending matter have not been proven and, therefore, cannot support an allegation of DCFEMS's alleged "custom" of racial discrimination. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that pleadings alone cannot establish a genuinely disputed fact). Thus, Plaintiff's reliance on the unverified allegations in *Clark v. District of Columbia*, No. 1:23-CV-01564 (RDM), and *Sanders v. District of Columbia*, No. 1:22-CV-02259 (BAH), to allege that African American employees at DCFEMS, including Plaintiff, face harsher discipline than their white counterparts, Am. Compl. ¶¶ 23–25, 86, 93, 95, 103, 107, is insufficient to plead municipal liability here. What is more, Plaintiff's references to *Clark* and *Sanders* are irrelevant to the case at hand. To start, the allegations in *Clark* predominately relate to retirement and employment benefits afforded to EMS workers, not disciplinary policies and procedures. *See Clark*, Second Am. Compl., ECF No. 26. Additionally, the court in *Clark* recently dismissed one plaintiff's (Michael Timmons) § 1983 claims relating to the denial of his purported right to sit on DCFEMS's trial board. *See Clark*, June 26, 2024 Mem. Op. & Order at 28–30, ECF No. 60. Further, Plaintiff acknowledges that in *Sanders*, two of the plaintiffs were ultimately exonerated by the trial board. Am. Compl. ¶¶ 93, 103. Thus, the unverified allegations in these cases fail to establish municipal liability here.

Next, Plaintiff seeks refuge in a consent decree that was entered into over 30 years ago in connection with a "settlement of a class action lawsuit alleging that [the District] had engaged in systemic race discrimination against African American firefighters." Am. Compl. ¶ 63 (citing *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990)). Plaintiff contends that "in support of her

7

claim that Defendant suffers from systematic racial bias that permeates its *disciplinary decisions*, Plaintiff referenced the consent decree . . . ." Pl.'s Opp'n at 17. However, the firefighters in *Hammon* asserted discrimination in hiring and promotions, not disciplinary decisions or referrals to the trial board. *See* Def.'s Mot. at 17 (citing *Hammon*, 752 F. Supp. at 1089). Thus, any reference to *Hammon* is unavailing because it is not analogous to this action. Further, Plaintiff maintains that the consent decree is relevant because "the current Fire Chief was trained by and worked closely with the DCFEMS leaders who were implicated in the consent decree" and "some of the firefighters involved in that case are still working today." Pl.'s Opp'n at 17. However, these new allegations were not incorporated in the Amended Complaint. Plaintiff may not amend her complaint via her opposition brief. *3D Glob. Sols., Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 8 (D.D.C. 2008) ("It is axiomatic . . . that a plaintiff may not amend his complaint through his opposition papers.") (citation and internal quotation marks omitted). As these allegations were not brought in the Amended Complaint, they should not be considered. Accordingly, Plaintiff's citation to the 30-year-old consent decree has no relevance in establishing municipal liability in this case.

Lastly, Plaintiff cites to annual reports for fiscal years 2019, 2020, and 2021 sent by DCFEMS to the D.C. Council, titled "Misconduct Allegation and Grievances Report," which purportedly show that "African American firefighters were more than twice as likely to have been referred to a trial board, and more than three times as likely to be terminated at a trial board, than their white counterparts." Am. Compl. ¶¶ 74, 76; Pl.'s Opp'n at 18–19. Plaintiff further asserts that "these reports show that African Americans are referred to severe discipline is [sic] seriously disproportionate to their population" and "the Court must take as true that the records Plaintiff reference do show a disparity in disciplinary actions." Pl.'s Opp'n at 18–19.

8

They do not. These reports do not address the entire demographic makeup of DCFEMS's workforce during fiscal years 2019, 2020, and 2021, *see* ECF No. 18-3, so Plaintiff's contention that African Americans were more likely to be referred to a trial board or terminated as compared to DCFEMS's population as a whole is unfounded. Thus, Plaintiff fails to state a municipal liability claim under §§ 1981 and 1983 under a custom or policy theory.

      **B.**      <u>**Plaintiff Fails to State a Claim Under §§ 1981 and 1983 Under a Policymaker Theory.**</u>

Plaintiff similarly fails to state a plausible claim of municipal liability based on the action of a final municipal policymaker causing her to suffer racial discrimination. A municipality may be held liable for the actions of a final policymaker when "the decision to adopt that particular course of action is properly made by [the] government's authorized decisionmakers[.]" *Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469 at 481 (1986)). A decision by a final policymaker can only represent an official act of government policy "if the decision to adopt that particular course of action is *intentionally made by the authorized policymaker*." *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 169 (D.D.C. 2012) (citation omitted) (emphasis added). The "authority to make municipal policy is the authority to make final policy specific to the tortious conduct," but "[i]f an official's discretionary decisions are constrained by policies not of that official's making, then those policies—rather [than] the official's departure from them—are the act of the municipality." *Id.* at 75; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (if an official's decisions are constrained by policies enacted by others, then "those policies, rather than the subordinate's departures from them, are the act of the municipality"). Discretion is insufficient to create municipal liability unless the decisionmaker had been granted final policymaking authority under D.C. law. *Singletary*, 766 F.3d at 74.

9

In the Amended Complaint, Plaintiff acknowledges that there are explicit, published disciplinary procedures in Article 9 of the collective bargaining agreement between DCFEMS and the Union that "outline[] the procedures for filing and hearing of grievances, and set[] out *the timeline and appeals processes for disciplinary actions*." Am. Compl. ¶¶ 13–14 (emphasis added). And in her opposition, Plaintiff concedes that "it may be true that the Fire Chief is bound by [the] collective bargaining agreement." Pl.'s Opp'n at 23. Therefore, despite Plaintiff's assertion that the Fire Chief "exercised his decision-making authority in a racially discriminatory manner to terminate her," *id.* at 26, the collective bargaining agreement, and, specifically, its disciplinary procedures, constrain officials, such as the Fire Chief, from being the final policymaking authority for municipal liability to apply. Nonetheless, Plaintiff cites to the court's March 14, 2024 decision *Garcia v. District of Columbia*, No. 22-CV-1487, 2024 WL 1111230 (D.D.C. Mar. 14, 2014), in which the court found that MPD's Chief is a final policymaker in the context of municipal liability claims. Pl.'s Opp'n at 23–24 (citing *Garcia*, 2024 WL 1111230, at *8). However, the plaintiff in *Garcia* asserted that MPD's Chief had "oversight and participation in the *entire disciplinary process*" and had the ability to "make *discretionary* employment and disciplinary decisions." Pl.'s Opp'n at 23–24 (citing *Garcia* 2024 WL 1111230, at *8) (emphasis added). Not so here. In this case, the Fire Chief was required to comply with the disciplinary terms and procedures of the collective bargaining agreement in his referral of Plaintiff to the trial board, and there is no allegation that he had input on the trial board's activities as it related to Plaintiff's personnel matter, and he had no control over the decision rendered by the trial board regarding Plaintiff's termination. Finally, as the Fire Chief accepted the decision of the trial board, he cannot be construed as a final policymaker for municipal liability to apply in this case.

Plaintiff further relies on *Steinberg v. District of Columbia*, 901 F. Supp. 2d 63, 71 (D.D.C. 2012), for the proposition that "[t]he Chief of the Fire Department is a final policymaker for the purposes of decisions not to reinstate and compensate agency employees against orders of the OEA." Pl.'s Opp'n at 15. But Plaintiff's § 1981 claim against the District is premised on the assertion that her *referral* to the trial board for termination was discriminatory and does not relate to the Fire Chief's purported violation of OEA orders. *See* Am. Compl. ¶¶ 172–88. Thus, Plaintiff's reliance on *Steinberg* is misplaced. Therefore, Plaintiff fails to state a municipal liability claim under §§ 1981 and 1983 via a policymaker theory.

### C. Plaintiff Fails to State a Claim Under §§ 1981 and 1983 Under a Deliberate Indifference Theory.

Plaintiff did not respond to the District's argument that she fails to state a claim of municipal liability under a deliberate indifference theory in her opposition to the District's motion to dismiss. *See* Pl.'s Opp'n; Def.'s Mot. at 21–22. Thus, the District's argument should be treated as conceded. *See Davis*, 264 F. Supp. 3d at 10.

\* \* \*

In sum, because Plaintiff fails to plausibly allege the District's municipal liability under any theory, the Court should dismiss the Amended Complaint.

### III. Plaintiff Fails to State a Race-Based Disparate Treatment Claim.

Plaintiff's race-based disparate treatment claim is solely premised on allegations that her referral to the trial board at DCFEMS was discriminatory: "Defendant's trial board policy and practice violates the 14th Amendment to the Constitution because it is racially discriminatory" and "[Plaintiff] was referred to a trial board for termination, when similarly situated non-African American fire fighters were not." Am. Compl. ¶¶ 175, 177. Among other things, to maintain a claim for discrimination, Plaintiff must show that "she suffered an adverse employment action,"

11

*Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002), which, in the Title VII context, has recently been defined as "*some harm* respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024).

*First*, Plaintiff's referral to the trial board does not constitute an adverse employment action because the referral *itself* did not alter any term or condition of her employment. Rather, the referral results in an investigation, and many individuals who are referred to the trial board are not subject to personnel actions, such as termination. This is exemplified by *Sanders v. District of Columbia*, No. 1:22-CV-02259 (BAH), *see* Am. Compl., ECF No. 14, where two of the three plaintiffs were *exonerated* by the trial board. *See id.* ¶¶ 93, 103. Critically, Plaintiff acknowledges in her opposition that she continues to work at DCFEMS over four years after her referral to the trial board. *See* Pl.'s Opp'n at 26; *see also* ECF No. 10-1. Therefore, Plaintiff's claim that she was subject to disparate treatment by virtue of her referral to the trial board is unavailing because it cannot constitute an adverse employment action.

*Second*, Plaintiff asserts that a referral to the trial board results in a *firefighter* being ineligible for overtime assignments, special events, and promotions, Am. Compl. ¶ 30, which she construes to be adverse employment actions. *See* Pl.'s Opp'n at 26–27. In its motion, the District argued that special events and promotions do not constitute adverse employment actions. Def.'s Mot. at 24–26. Plaintiff failed to address these arguments, and thus they are conceded. *See Davis*, 264 F. Supp. 3d at 10. And with respect to overtime, Plaintiff fails to allege that she was working overtime assignments prior to her referral to the trial board and that as a result of the referral, she was precluded from working those overtime assignments. A *potential* lost opportunity to earn overtime is not an adverse employment action. *See* Def.'s Mot. at 23–24; *see, e.g.*, *Sims v. District of Columbia*, 33 F. Supp. 3d 1, 7 (D.D.C. 2014). Moreover, *Lancaster*

*v. DaVita Vance-Cooks*, 967 F. Supp. 2d 375 (D.D.C. 2013), *see* Pl.'s Opp'n at 26, is not on point here because the plaintiff in that case was actually earning overtime wages prior to filing an EEOC complaint and after that filing, he was restricted or denied those overtime opportunities. Nonetheless, Plaintiff encourages the Court to permit discovery because, allegedly, "firefighters work a *great deal* of overtime generally, and Plaintiff did so, in particular"; "Plaintiff will be able to demonstrate that her overtime pay made up in excess of 25% of her income"; and "she is missing out on thousands of dollars of overtime pay that she would otherwise be earning. Pl.'s Opp'n at 27–29 (emphasis in original). However, it was not alleged in the Amended Complaint that Plaintiff ever worked overtime prior to her referral to the trial board. Again, Plaintiff may not amend her complaint via her opposition brief. *3D Glob. Sols., Inc.*, 552 F. Supp. 2d at 8. Thus, Plaintiff's conclusory allegations that she was denied overtime, special events, and promotions because of her referral to the trial board are insufficient to establish that she suffered an adverse employment action.

*Finally*, Plaintiff failed to plead facts sufficient to show an inference of discrimination through showing "that she was treated differently from similarly situated employees who are not of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). To be "similarly situated," Plaintiff must "demonstrate that all of the relevant aspects of her employment situation were 'nearly identical' to that of the employee." *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). In her opposition, Plaintiff acknowledges that "an EMS Supervisor, someone with *more responsibility* than [her], and a Battalion Fire Chief, someone with *both more experience and authority* than [her]" "made the same judgment call that she made" and were not referred to the trial board like she was. Pl.'s Opp'n at 27–28 (citing Am. Compl. ¶

13

163). Because these employees have more responsibility, experience, and authority than Plaintiff, they cannot possibly serve as similarly situated comparators because their employment situations are not "nearly identical" to hers. Moreover, Plaintiff failed to assess her pediatric patient, failed to follow DCFEMS's Refusal of Care Policy, and failed to properly complete the "Patient Care Report" corresponding with the May 22, 2022 dispatch at issue. *See* ECF No. 10-1. The alleged comparative incident did not involve a pediatric patient, and Plaintiff does not allege that her comparators failed to comply with the Refusal of Care Policy and DCFEMS's "Patient Care Reporting (ePCR) Directive," as she did. Thus, Plaintiff is not similarly situated to her alleged comparators and cannot establish a claim for race-based disparate treatment on this basis. Accordingly, the Court should dismiss the Amended Complaint.

## CONCLUSION

For these reasons, and for the reasons set forth in the District's moving brief, the Court should grant the District's motion and dismiss the Amended Complaint with prejudice.

Dated: September 26, 2024          Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Samantha N. Lewis*
SAMANTHA N. LEWIS [187701]
ZITA ORJI [1740117]
Assistant Attorneys General

400 6th Street, NW
Washington, D.C. 20001
(202) 355-4837
samantha.lewis1@dc.gov

*Counsel for Defendant District of Columbia*